IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE DOE, AS GUARDIAN OF JOHN DOE AN INCAPACITATED PERSON,<br><br>Plaintiff,<br>v.<br><br>STATE OF OKLAHOMA, ex rel., OKLAHOMA DEPARTMENT OF HUMAN SERVICES, an agency of the State of Oklahoma; OKLAHOMA STATE DEPARTMENT OF HEALTH, an agency of the State of Oklahoma; DEBORAH SHROPSHIRE, in her individual capacity; LUKE COOPER, in his individual capacity; KELLY THOMPSON, in her individual capacity; ANGELA THOMPSON, in her individual capacity; NANCY UNRUH, in her individual capacity; RAY HESTER, in his individual capacity, SHELLY ROBINSON, in her individual capacity; and KEITH REED, in his individual capacity;<br><br>Defendants. | Case No.: 25-cv-01011-J |

## MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant, Oklahoma State Department of Health ("OSDH"), respectfully moves to dismiss this action[1] pursuant to Fed. R. Civ. P. 12(b)(1) and (6). In support of this Motion, OSDH states:

### BRIEF IN SUPPORT
### STATEMENT OF THE CASE

Plaintiff brings this suit as guardian of "John Doe" against OSDH as well as Department of Human Services ("DHS") and other individuals. Plaintiff alleges Liberty of

---

[1] Plaintiff's Petition originally filed in Oklahoma County District Court will be referred to herein as "Complaint."

Oklahoma, LLC entered a contract with the State of Oklahoma to operate the Greer Center to provide medical and rehabilitative services [Doc. 1-2 at ¶19]. The quality of care for Greer Center Residents was under the control of DHS. *Id.* at ¶21.

Plaintiff alleges that Doe, who has been diagnosed with intellectual disabilities and mental illness, relies on Defendant DHS to provide for his health and safety. *Id.* at ¶¶38, 42. Doe was placed at Greer center on August 2, 2022, after a pending criminal charge. *Id.* at ¶43. Plaintiff alleges Doe suffered numerous injuries while housed at Greer Center. *Id.* at ¶ 49. For instance, Doe suffered seizures. *Id.* at ¶ 50. Plaintiff alleges Doe also suffered numerous injuries with "no purported explanation…" *Id.* at ¶ 51.

In 2023, the Oklahoma State Office of Client Advocacy ("OCA"), a division of DHS[2], placed Liberty employee Martinez on a "Plan for Immediate Safety" ("OCA Plan") following incidences of abuse of clients. *Id.* at ¶ 56. Martinez was to be barred from the Greer Center until OCA finished its investigation. *Id.* at ¶ 57. However, OCA investigators learned Martinez had returned to work on or around September 13, 2023. *Id.* at ¶ 57. On September 21, 2023, after Martinez was allowed to return to work, Doe was found to have numerous discolorations on his chest and abdomen. *Id.* at ¶ 61. Martinez was assigned to work with Doe on the evening of September 20 into the morning of September 21. *Id.* at ¶ 62. Martinez was terminated on September 27, 2023. *Id.* at ¶ 64.

During the investigation, Liberty administrators and DHS learned that multiple other Liberty employees or agents were suspected of being involved with injuries to Doe. *Id.* at ¶ 66.

---

[2] OCA has since been transferred to OSDH effective November 2024. 10A O.S. §1-9-112(a) (2024). However, this transfer occurred after the allegations contained in Plaintiff's Complaint.

Plaintiff alleges that since September of 2023, at least nine employees have been terminated from the Greer Center, with eight having been arrested and facing criminal charges. *Id.* at ¶ 79. Plaintiff alleges DHS was required to maintain an OCA office at the Greer Center, train Greer Center employees, and was required to monitor the well-being of its clients but failed to do so. *Id.* at ¶¶ 87-91.

Plaintiff now brings the following claims: (1) negligence; (2) gross negligence; (3) Violation of the Oklahoma Nursing Home Act; (4) Violation of the Oklahoma Protective Services for Vulnerable Adults Act; (5) negligence *per se*; (6) breach of contract; and (7) violations of the Eighth and Fourteenth Amendments.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." "[A]n assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court . . . ." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180-81 (10th Cir. 2002) (finding that because the State had not waived its Eleventh Amendment immunity, the federal "district court lacked subject matter jurisdiction over [the plaintiff's] § 1983 claim with respect to . . . [the state official], acting in her 'official capacity.'"). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971). "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) (citing *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include enough factual content, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court assesses plausibility by (1) "identify[ing]" allegations "not entitled to the assumption of truth" such as "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," and "mere conclusory statements," and then (2) "look[ing] only" at the remaining "well-pleaded factual allegations" to determine if a plaintiff has "plausibly suggest[ed]" a defendant's liability. *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (second alteration in original) (citations omitted).

## Argument and Authorities

**Proposition I: OSDH is entitled to Eleventh Amendment Immunity**

Plaintiff makes claims under Section 1983 and various state claims against OSDH. The Eleventh Amendment[3] bars these claims as OSDH is the same as suing the state itself, and as such cannot be sued in federal court for money damages. *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

---

[3] Even though Defendant removed this case, removal does not constitute a waiver of immunity from liability. "[A] state may waive immunity from suit while retaining immunity from liability for monetary damages…[and] does not gain an unfair advantage asserting in federal court an affirmative defense it would have had in state court." *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1205-1206 (10th Cir. 2002).

State." U.S. Const. amend XI. The Eleventh Amendment bars suits for damages against a state in federal court, absent a waiver of immunity by the state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (The Eleventh Amendment bars private lawsuits in federal courts against unconsenting states and their agencies). The State of Oklahoma has not waived its sovereign immunity under the Eleventh Amendment; therefore, all claims against it must be dismissed. *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006). *Id.*

**Proposition II: Plaintiff has failed to state a claim against OSDH.**

Plaintiff brings this suit against the OSDH. However, OSDH is mentioned only three times in the Complaint: in Paragraph 3, stating it is "an agency of the State of Oklahoma," paragraph 13 stating OSDH is based in Oklahoma, and finally in paragraph 18 where it is alleged that OSDH is the "licensing body for Greer Center" and "performs inspections of the Greer Center." However, none of the allegations contain any events that occurred at OSDH or actions committed by OSDH employees. Though Plaintiff claims OSDH licensed Greer Center, and inspected it, there are no allegations that either of these actions resulted in any harm to Plaintiff.

A district court may dismiss a complaint if the factual allegations are not sufficient to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Pertinently, Fed. R. Civ. P. 8 requires, among other things, that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8 (a)(2), (d)(1).

To survive a motion to dismiss, it is important "the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against…[him], as distinguished from collective allegations against [defendants as a group]." *Robbins v. State of Okla. et al.,* 519 F.2d 1242, 1250 (10th Cir. 2008). Plaintiff's claims must fail because Plaintiff's Complaint is completely devoid of any specific allegations of conduct or actions taken by OSDH. Plaintiff simply states generic conclusory allegations, lumping all Defendants together and including unnamed individuals. Plaintiff never identifies OSDH as taking any particular action or inaction as it is alleged to have resulted in any injury to Doe. The bulk of Plaintiff's Complaint concerns actions taken (or not taken) by other Defendants: Liberty staffed Greer Center (¶30); the perpetrators of abuse were all employees or agents of Liberty (¶34); DHS retains the right to investigate the operations at Greer Center (¶23). The only allegations against OSDH are ones lumped in with other Defendants or conclusory statements. OSDH cannot reasonably be expected to identify any claims against it which supposedly gives rise to any liability, thereby making Plaintiff's Complaint subject to dismissal under Rule 8(a)(2) of the Federal Rules of Civil Procedure.

**Proposition III: OSDH is not liable for gross negligence**

In Count 2, Plaintiff alleges gross negligence. However, OSDH is only liable for the torts of employees acting within the scope of their employment. 51 O.S. §153. The Governmental Tort Claims Act ("GTCA") sets forth the precise extent to which the State is no longer immune. *Id.* Section 12.1 of the GTCA provides that the State of Oklahoma adopts the doctrine of sovereign immunity, and the State and all of its employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall

be immune from liability for torts. *Id.* at §152.1(A). It also provides the State waives immunity only to the extent and manner provided for in the GTCA. *Id.* at §152.1 (B).

The State and its employee's tort liability is exclusively governed by the GTCA. 51 O.S. §153(B). The GTCA is the exclusive remedy against a governmental entity in this state for the recovery of damages arising from the tortious acts of its employees. *Fuller v. Odom,* 741 P.2d 449, 452 (Okla. 1987). "Allegations of gross negligence do not fall within the ambit of the GTCA pursuant to 51 O.S. §152(9), defining 'scope of employment' to mean performance by an employee acting in good faith within the duties and tasks lawfully assigned." *Medina v. State*, 871 P.2d 1379, 1381 (1993). As such, OSDH is immune from liability for any claims of gross negligence.

**Proposition IV: OSDH is not liable under the GTCA for licensing.**

Though it is not clear if Plaintiff is alleging OSDH is liable due to its licensing powers, OSDH is immune from such claims. Under the GTCA, OSDH is immune for:

> Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend, revoke any permit, license, certificate, approval, order or similar authority. 51 O.S. §155(12).

To the extent Plaintiff alleges OSDH was negligent in its licensing of Greer center, or failure to revoke any licenses, Plaintiff's claims fail.

**Proposition V: OSDH is not liable under 63 O.S. 1-1901 or 43A O.S. 10-101**

In Claim 3, Plaintiff sues under the Oklahoma Nursing Home Care Act (NHCA). The NHCA requires the nursing home facility to follow certain guidelines and aims to protect residents of these nursing homes from caretakers and other residents. *See* 63 O.S. §1-1918. In Claim 4, Plaintiff brings suit under the Oklahoma Protective Services for Vulnerable Adults

Act. This act "recognizes that many citizens of this state, because of the infirmaries of aging, incapacity, or other disability are unable…to protect themselves from exploitation, abuse, or neglect and are in need of protective services." 43A O.S. §10-102(A). "The Protection Services for Vulnerable Adults Act is designed to establish a program of protective services for vulnerable adults in need of those services." *Id.* at 10-102(C). "Caretaker" is defined as "a person who has…(a) the responsibility for the care of a vulnerable adult voluntarily[.] *Id.* at 10-103(A)(6).

There are no allegations that OSDH is a caretaker or otherwise involved in Plaintiff's care. Plaintiff's Complaint makes it clear that Plaintiff was placed in the Greer Center by Defendant DHS. Plaintiff further alleges the Greer Center provides services due to a contract between Liberty and the State of Oklahoma [Doc. 1-2 at ¶44]. Plaintiff then claims Defendant DHS failed to provide certain services Doe was entitled to. *Id.* at ¶¶87-91. Plaintiff further alleges OCA, a division of DHS, failed to properly investigate abuse. *Id.* Finally, Plaintiff alleges "John Doe has depended entirely on DHS, including DDSD and the Office of Client Advocacy ("OCA"), to provide for his health and safety, including during his time at the Greer Center." *Id.* at ¶42. There are no allegations OSDH violated either of these statutes.

Nor are there any allegations OSDH is an owner or licensee of Greer and therefore has not stated a violation of the NHCA. The NHCA allows for a resident of a nursing home to bring a legal cause of action against an "owner" or "licensee" of a nursing home for an intentional or negligent act or omission. *Fanning v. Brown*, 2004 OK 7, ¶ 13, 85 P.3d 841, 846. The Oklahoma Supreme Court made it clear the legislature did not intend for the statutory language to be so broadly construed as to extend liability to "persons or entities which had

some sort of legal interest in the facility but are not the owner." *Id.* Oklahoma statutes define an owner as "[t]he person or entity that stands to profit or lose as a result of the financial success or failure of the operation shall be presumed to be the owner of the facility," and licensee as "the person, a corporation, partnership, or association who is the *owner* of the facility which is licensed by the Department [of Health] pursuant to the provisions of the Nursing Home Care Act." 63 O.S. § 1–1902(16), 1902(13) (emphasis added).

OSDH is the state agency responsible for licensing an Oklahoma nursing facility. Plaintiff's Complaint alleges as much: OSDH is "the licensing body for Greer Center, and other similar facilities, as well as the caretakers employed to work at each facility" [Doc. 1-2 at ¶18]. This is the only fact pled by Plaintiff regarding OSDH's involvement in Doe's care. There are no facts showing OSDH fits the statutory definition of a licensee or owner, subject to a duty under the NHCA.

As there are no allegations OSDH was involved in Plaintiff's care, or any other facts that would give rise to liability under these statutes, any claims under these statutes must be dismissed as to OSDH.

**Proposition VI: Plaintiff has failed to state a claim for negligence *per se*.**

In Count 5, Plaintiff makes broad allegations that OSDH "violated" two Oklahoma Statutes, and is therefore liable under the theory of negligence *per se*. A negligence *per se* claim requires a showing that (1) the plaintiff was injured by the violation of a statute, (2) the injury was the type intended to be prevented by the statute; and (3) the plaintiff was a member of the class meant to be protected by the statute. *Romero v. City of Miami*, 8 F.Supp.3d 1321, 1333 (N.D. Okla. 2014) *(quoting Busby v. Quail Creek Golf & Country Club*, 885 P.2d 1326, 1329 (Okla.

1994)). In this case, Plaintiff has failed to satisfy the first element because she has failed to sufficiently plead any action or inaction on behalf of OSDH that would lead to a violation of either statute referenced in the Complaint. With regard to the Oklahoma Protective Services for Vulnerable Adults Act, Plaintiff alleges OSDH failed to investigate the Greer Center but fails to show any facts that OSDH was required under law to do so. Specific to the Oklahoma Nursing Home Care Act, there are no allegations OSDH has any duties under that statute, either. In fact, Plaintiff mentions OSDH in their Petition only four times and these are simply conclusory statements as to OSDH liability [Doc. 1-2, ¶ 13, ¶ 18, ¶ 34, ¶123]. Instead, Plaintiff directs factual allegations toward DHS, OCA, and specific employees for the control and quality of care patients receive. *Id.* at ¶¶ 22-24. Plaintiff's scarcely pled facts in regard to OSDH do not meet the first element of a negligence *per se* claim showing a violation of the statute.

      Furthermore, Plaintiff's negligence *per se* claim fails because the statutes Plaintiff seeks to use do not contain the requisite "positive objective standard," or "element of required conduct." "A negligence *per se* instruction is not appropriate where the terms of the statute do not impose positive objective standards." *Smith v. Barker,* 2017 OK CIV APP 69, 29, 419 P.3d 327, 333. For example, when "statutory duties imposed upon the [plaintiff] are undefined or defined only in abstract general terms," they do not support liability under a negligence *per se* theory. *Id.* This often comes up in the context of car accidents - statutes requiring drivers to devote full time and attention to driving; exercise ordinary care; refrain from inattentive driving; or refrain from starting, stopping, or turning unless such movement can be made in safety without endangering other vehicles or pedestrian traffic may not be used for purposes

of a negligence *per se* theory of liability. *Id.* Instead, as the court in *Orthman v. Premiere Pediatrics PLLC* explained:

> The standard of duty set forth in the statute must be fixed, defined by law, and be the same in all circumstances, otherwise a claim for negligence *per se* is not appropriate. Where a determination as to whether the conduct rises to the standards of conduct enjoined by the statute depends on the circumstances proved and requires evaluation of the evidence, then the issue is one of negligence, not negligence *per se*. 2024 OK CIV APP 7, 24, 545 P.3d 124, 135.

Here, the statutes cited by Plaintiff clearly give abstract standards. In the Nursing Care Act: "Every resident's civil and religious liberties…shall not be infringed upon…" 1-1918(B)(1); "Every resident shall have the right…to present grievances…" "Every resident shall have the right to prompt efforts by the faculty to resolve grievances…" None of these statutes give an objective standard to be followed by OSDH. Plaintiff's claims for negligence *per se* must be dismissed.

**Proposition VII: Plaintiff's breach of contract claim must fail as OSDH is not a party to any contract**

In Claim 6, Plaintiff has failed to state a claim for breach of contract against OSDH. Plaintiff alleges that "Liberty had at all times pertinent to the facts therein, a contract with DHS to provide medical and rehabilitative services to clients at the Greer Center" [Doc. 1-2 at ¶151]. See also "As a client of Greer Center, John Doe is a third-party beneficiary of the contract between Liberty and DHS to receive medical and rehabilitate services" *Id.* at ¶153; "DHS's actions…was a breach of the contract between DHS and Liberty" *Id.* at ¶154; and "As a result of DHS's breach of contract" *Id.* at ¶156. The contract complained of is between Liberty and DHS. There is no allegation that OSDH is a party nor involved in any way.

Plaintiff has failed to state a claim against OSDH for breach of contract. Plaintiff's claim must be dismissed.

**Proposition VIII: OSDH is not a person and cannot be sued under Section 1983**

In Plaintiff's Seventh Cause of Action, Plaintiff alleges constitutional violations via Section 1983. Congress has not abrogated the state's Eleventh Amendment immunity through the enactment of 42 U.S.C. § 1983. See *Quern v. Jordan*, 440 U.S. 332, 345 (1979). States and their agencies are not persons under 42 U.S.C. § 1983 and are, therefore, not subject to suit under the statute. *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 617 (2002); *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68-69 (1997) (noting that § 1983 actions cannot be brought against the state); *Stidham v. Peace Officers Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2003) (States are not persons under § 1983); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003) (suits for damages against states should be dismissed because the states are not persons under § 1983 and because the states are protected by the Eleventh Amendment). Plaintiff appears to assert claims against the State for an alleged civil rights violation. Such claims would have to be brought under 42 U.S.C. § 1983. However, because states are not persons under 42 U.S.C. § 1983, they are not subject to suit. *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 617 (2002); *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Because the State is not a person for purposes of §1983, Plaintiff's Seventh Cause of Action must be dismissed.

**Proposition IX: GTCA limits Plaintiff to claims arising after September 17, 2023.**

Prior to filing suit against OSDH, a plaintiff must present notice of the claim to the State or relevant political subdivision within one year of the date of the loss. 51 O.S. §156(B). If it is not presented within the one year, the claim is "forever barred." *Id.,* see also *I. T. K. v. Mounds Pub. Sch.,* 2019 OK 59, ¶ 49, 451 P.3d 125, 145. This pre-suit notice "is a jurisdictional prerequisite." *Jones v. Indep. Sch. Dist. 89,* No. 19-779-R, 2019 WL 6917896 at *1. Plaintiff submitted notice of his tort claim on September 17, 2024. Therefore, any claims alleged to have occurred prior to September 17, 2023, (the one-year date) are barred by the GTCA against OSDH.

**Proposition X: the state is not liable for punitive damages**

In paragraph 109, Plaintiff alleges he is entitled to punitive damages. However, OSDH is not liable for punitive damages either under Section 1983 or the GTCA. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); 51 O.S. §154(C).

## CONCLUSION

For all these reasons, OSDH respectfully requests the Court dismiss Plaintiff's Complaint.

Respectfully submitted,

_____
**LAUREN RAY, OBA#22694**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:    405.521.3921
Facsimile:    405.521.4518
Email: Lauren.Ray@oag.ok.gov

*Attorney for Defendant*

14 | P a g e

## CERTIFICATE OF SERVICE

    I hereby certify that on this 11th day of September 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are registered participants.

_____
**Lauren Ray**