## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANE DOE, AS GUARDIAN OF JOHN DOE AN INCAPACITATE PERSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  CIV-25-1011-J |
| STATE OF OKLAHOMA, ex rel, THE OKLAHOMA DEPARTMENT OF HUMAN SERVICES an agency of the STATE OF OKLAHOME, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT OF
## <u>DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES</u>

**John K.F. Langford (OBA #21012)**
**Assistant General Counsel**
**Department of Human Services**
**P.O. Box 25352**
**Oklahoma City, OK  73125-0352**
**Telephone:  (405) 521-3638**
**E-mail: John.Langford@okdhs.org**

*Attorney for Defendant Oklahoma Department of Human Services.*

*September 12, 2025*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................ ii

MOTION TO DISMISS AND BRIEF IN SUPPORT ................................................. 1

I.  STATEMENT OF THE CASE ............................................................. 1

II. ARGUMENT AND AUTHORITIES ...................................................... 3

    A.  **Motion to Dismiss Standard** ........................................................... 3

    B.  **OKDHS is not a "person" subject to suit under 42 U.S.C. § 1983** .............. 4

    C.  **Plaintiff's Complaint fails to state a claim upon which relief can be granted against DHS under the Oklahoma Governmental Tort Claims Act ("GTCA")** ...................................................... 6

    D.  **DHS Is Explicitly Exempt from Plaintiff's "Causes of Action" Nos. 1, 2, 3, 4, and 5** ................................................................. 7

    E.  **DHS Is Exempt from Tort Liability from Acts or Omissions of an Independent Contractor as Per 51 O.S. § 155 (18).** ..................... 9

    F.  **DHS is exempted from tort liability by 51 O.S. § 155 (5) for losses resulting from negligent training or supervision** ................................. 11

    G.  **Plaintiff Cannot Recover Punitive Damages as a Matter of Law** ............. 12

    H.  **Plaintiff Cannot Recover for Events Occurring Prior to their Provision of Notice Under the GTCA** ...................................................... 12

    I.  **Alleged Acts of Violence and Other Intentional Acts are Supervening Causes** ................................................................... 13

    J.  **DHS Is Not Liable for Assault And/Or Battery Allegedly Committed by Employees of an Independent Contractor** .................... 15

    K.  **Plaintiff's Claim for Breach of Contract Against DHS Fails as a Matter of Law** ................................................................... 16

**III. CONCLUSION** ..................................................................................... **18**

**CERTIFICATE OF SERVICE** ................................................................... **18**

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

### <u>Federal</u>

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678 (2009) ................................................................................ 3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 570 (2007) ............................................................................ 3, 4

*Briggs v. Oklahoma ex rel. Oklahoma Dep't of Human Servs.,*
   472 F. Supp. 2d 1304, 1310 (W.D. Okla. 2007)........................................... 8, 9

*Burns v. Holcombe,*
   2010 WL 2756954 at *13 (E.D. Okla. 2010) .............................................. 9,11

*Catholic Charities of Sw. Kansas, Inc. v. PHL Variable Ins. Co.,*
   74 F.4th 1321, 1324-25 (10th Cir. 2023)....................................................... 17

*Cathryn R. Wallace v. Golden Rule Insurance Co.,*
   CIV-22-00878-PRW, 2023 WL 6380016, 5 (W.D. Okla. Sept. 29, 2023) ................. 17

*Elizabeth S. v. Okla. City Pub. Sch.,*
   2008 WL 4147572, at *5 (W.D. Okla. 2008)................................................. 11

*Harris v. Champion,*
   51 F.3d 901, 905-906 (10th Cir. 1995)............................................................ 5

*Howlett v. Rose,*
   496 U.S. 356, 365 (1990) .................................................................................. 5

*Lapides v. Bd. of Regents,*
   535 U.S. 613 (2002)........................................................................................... 5

*McKinney v. State of Oklahoma,*
   925 F.2d 365 (10th Cir. 1991)........................................................................... 5

*Ngiraingas v. Sanchez,*
   495 U.S. 182 (1990) ........................................................................................... 5

*Ridge at Red Hawk, L.L.C. v. Schneider*,
  493 F.3d 1174, 1177 (10th Cir. 2007) ........................................................... 4

*Robbins v. State of Oklahoma*, ex rel. Dept. of Human Services
  519 F.3d 1242, 1247-48 (10th Cir. 2008) ...................................................... 4

*Pierce v. State of Okla., ex rel. Dept. of Human Services,*
  2008 WL 2987190 (E.D. Okla. 2008) ......................................................... 11

*Sossamon v. Texas,*
  563 U.S. 277, 284, 285 (2011) ...................................................................... 7

*Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla.,*
  960 F. Supp. 2d 1254, 1269–70 (N.D. Okla. 2013) ..................................... 12

*Will v. Michigan Dept. of State Police*,
  491 U.S. 58 (1989) ......................................................................................... 5

## <u>STATE</u>

*Biggins v. Shore*,
  523 Pa. 148, 565 A.2d 737, 741 (1989) ....................................................... 18

*Ceasar v. City of Tulsa*,
  861 P.2d 349,351 9 Okla. App. 1993 ........................................................... 13

*City of Sand Springs v. Department of Public Welfare*,
  1980 OK 36, 608 P.2d 1139 ............................................................................6

*Estate of Doyle v. Sprint/Nextel Corp.,*
  248 P.3d 947 (Okla Civ. App. 2010) ........................................................... 14

*GJA v. Oklahoma Dep't of Hum. Servs.,*
  2015 OK CIV APP 32, ¶ 18, 347 P.3d 310, 314 ........................................... 8

*Graham v. Keuchel*,
  847 P.2d 342, 349 (Okla. 1993) ................................................................... 14

*Gurley v. Mem. Hops. Of Guymon*,
  1989 OK 34, ¶6, 770 P.2d 573, 576 ............................................................... 7

*Lowery v. Echostar Satellite Corp.,*
  160 P.3d 959, 964 (Okla. 2007) ................................................................... 14

*Mansfield v. Circle K. Corp.*,
   1994 OK 80, 877 P.2d 1130 ..................................................................... 9

*Morales v. City of Oklahoma City,*
   230 P.3d 869, 878 (OK 2010) ................................................................. 14

*Ochoa v. Taylor*,
   1981 OK 20, 635 P.2d 604,608–09 ......................................................... 11

*Prasad v. George Washington Univ.*,
   390 F. Supp. 3d 1, 34 (D.D.C. 2019)..................................................... 17

*Prince v. B.F. Ascher Co., Inc.,*
   90 P.3d 1020, 1029 (Okla. Civ. App. 2004)............................................ 14

*Randolph v. Oklahoma Military Dep't ex rel. State*,
   1995 OK CIV APP 30, ¶ 10, 895 P.2d 736, 739 ...................................... 13

*Rout v. Crescent Pub. Works Auth.,*
   1994 OK 85, ¶ 8, 878 P.2d 1045, 1049 ................................................... 13

*Skurnack v. State ex. rel. Dept. of Human Services*,
   2002 OK CIV APP 37, ¶5, 46 P.3d 198 .................................................... 8

*Sullins v. American. Medical Response of Oklahoma, Inc.,*
   2001 OK 20, 23 P.3d 259 ...................................................................... 11

*Teeter v. City of Edmond,*
   2004 OK 5, 85 P.3d 817 ......................................................................... 11

*Thompson v. Presbyterian Hosp., Inc.,*
   1982 OK 87, ¶12, 652 P.2d 260, 264 ...................................................... 13

*Tuffy's, Inc. v. City of Oklahoma City*,
   2009 OK 4, ¶ 13, 212 P.3d 1158, 1164 .................................................. 16

*Wathor v. Mut. Assur. Adm'rs, Inc.*,
   2004 OK 2, ¶ 15, 87 P.3d 559, 563 ......................................................... 17

# STATUTES

## Federal

42 U.S.C. § 1983 ............................................................................................... 4

Fed .R. Civ. Proc. 12(b)(6) ................................................................ 1, 3, 4, 13

## State

Okla. Const. art. 25 § 1 ...................................................................................6

Okla. Const. art. 25 § 2 ...................................................................................6

Okla. Const. art. 25 § 3 ...................................................................................6

51 O.S. § 152.1(A) and § 153(A) ...................................................................7

51 O.S. § 152.1(B) ..........................................................................................7

51 O.S. 152(7) ............................................................................................... 11

51 O.S. §§ 153(A) and (B) ..............................................................................7

51 O.S. § 154(C) ........................................................................................... 12

51 O.S. § 155(4) ........................................................................................ 7, 8

51 O.S. § 155(5) ........................................................................................... 11

51 O.S. § 155(18) ................................................................................ 9, 10, 11

51 O.S. § 171 ...................................................................................................6

56 O.S. §162 ...................................................................................................6

56 O. S. §§162.1(a) and 162.1a......................................................................6

56 O.S. §§162.1(a) and (b) and §162.1a ........................................................6

## OTHER

Restatement (Second) of Contracts § 302 (1981)............................................ 17

Restatement (Second) of Contracts § 304-305 (1981) ....................................................... 17

Restatement (Second) of Contracts § 305 (1981).............................................................. 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JANE DOE, AS GUARDIAN OF JOHN    )
DOE, AN INCAPACITATED PERSON,    )
    )
    PLAINTIFF,    )
    )
v.    )     **Case No.: CV-25-1011-J**
    )
STATE OF OKLAHOMA, ex rel.,    )
OKLAHOMA DEPARTMENT OF    )
HUMAN SERVICES, an agency of the    )
STATE OF OKLAHOMA, et al.,    )
    )
    DEFENDANTS.    )

## MOTION TO DISMISS AND BRIEF IN SUPPORT OF
## <u>DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES</u>

Comes now, the Defendant, the Oklahoma Department of Human Services (hereinafter "OKDHS"), and respectfully moves the Court to dismiss this action against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as the Complaint fails to state a claim upon which relief can be granted.

## <u>BRIEF IN SUPPORT</u>

## I.  <u>STATEMENT OF THE CASE</u>

Greer is a residential facility for persons with intellectual disabilities who also have a "…co-occurring behavioral and/or mental challenge."[1] Additionally, Plaintiff clearly admit DHS' Greer involvement is limited to ownership of the campus and buildings and further admit <u>Greer was operated by Liberty of Oklahoma Corporation/Liberty Healthcare</u>

---

[1] *See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶ 14.

Corporation (hereinafter "Liberty") as a contractor *wholly* independent from DHS for 25 years and Liberty – through its employees – was to provide medical and rehabilitative services to Greer residents such as John Doe.[2] Likewise, Plaintiff admits it was *Liberty* who "…staffed Greer Center with a variety of employees and agents, including, but not limited to nurse aides, registered nurses, medical doctors, and psychologists."[3] Further, Plaintiff tells us that the alleged perpetrators of abuse were "…all employees or agents of Liberty…."[4] Plaintiff also tells us the alleged perpetrators/Liberty Employees deliberately concealed/conspired to conceal their alleged abuses from not only Liberty but also OKDHS:

70. These staff members would use names of others, often names of those who worked during other shifts, to confuse their victims and escape consequences.

71. While the abuse was occurring, Greer Center Perpetrators would often have one employee serve as a lookout to watch down the hallway for anyone coming.

72. This abuse usually occurred after five (5) p.m., when the administration had left for the day.

73. The Perpetrators would ensure that other clients in Greer Center knew of their treatment of John Doe and others to intimidate them.

74. The Perpetrators would also intimidate their victims, including John Doe, so that they would not report the abuse to their families. This included standing over clients when they would speak with their loved ones on the phone, ensuring that the clients would not reveal the horrific abuse going on inside the facility that was supposed to keep them safe.

75. The Perpetrators would use food and drugs to bribe the other clients to fight each other and not to speak out about the abuse.

---

[2] *See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶ 19.
[3] *See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶ 30.
[4] *See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶ 30.

76. The Perpetrators/abusers would then retaliate against clients and co-workers who attempted to speak out about the abuse.

77. The Perpetrators and others would then fail to complete required Client Injury Reports when a client would suffer from an injury. If a report was completed, the employees would fabricate stories that clients fell or punched themselves to cover up the abuse.

78. The Perpetrators conspired with others, including superiors, to tell them what to write in the Client Injury Reports and promised to vouch for one another regarding the accuracy of the report.

*See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶¶ 70-78.

Thus, Plaintiff's lawsuit is premised upon <u>*Liberty*</u> employees *intentionally* abusing residents and then *purposely* intimidating, confusing, or bribing them to prevent reporting of this intentional. To be sure, Plaintiff does not allege *any* DHS employee abused any resident or prevented any resident from reporting any abuse.

For these alleged intentional actions by Liberty employees, Plaintiff sets out seven "causes of action" and seeks compensatory and punitive damages, costs, reasonable attorney fees, and unspecified "other relief."  However, as shown below, Plaintiff's suit fails to state a claim upon which relief can be granted against DHS and must be dismissed

## II.  ARGUMENT AND AUTHORITIES

### A.    Motion To Dismiss Standard

DHS asserts that Plaintiff has failed to state a claim for relief with respect to all of the "causes of action" included in the Complaint. "To survive a motion to dismiss [for failure to state a claim under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly* at 556). Under this standard, the Tenth Circuit has stated that "the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original). In other words, a plaintiff must nudge his "claims across the line from conceivable to plausible[.]" *Twombly* at 570. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679.

The Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008), explained that "plausibility" refers to the scope of the allegations in the complaint; "if they are so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action" then such allegations are not sufficient to place defendants on notice "of the actual grounds of the claim" against them. When this standard is applied to the factual allegations in the First Amended Complaint, it is clear that this action should be dismissed pursuant to Rule 12(b)(6).

### B.  OKDHS is not is a "person" subject to suit under 42 U.S.C. § 1983.

OKDHS is not a "person" subject to suit under 42 U.S.C. § 1983.  Consequently, Plaintiff's claims for alleged violations of rights under the United States Constitution fails.

In this regard, §1983 provides in part as follows:

> [e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. [Emphasis added].

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the U.S. Supreme Court considered the issue of whether a State is a "person" under §1983. After examining the express language, congressional purpose and legislative history of the statute, the Supreme Court concluded that States or other governmental entities that are considered "arms of the State" for Eleventh Amendment purposes (as well as state officials acting in their "official" capacities) are not "persons" under §1983. *Id.* at 68-71; *see Howlett v. Rose*, 496 U.S. 356, 365 (1990) (holding "*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under §1983 *in either federal court or state court*" (emphasis added)); *Harris v. Champion*, 51 F.3d 901, 905-906 (10th Cir. 1995); *McKinney*, 925 F.2d at 365 (holding that the Eleventh Amendment bars actions against OKDHS under § 1983 in federal court); *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990). The holding in *Will* was later reiterated by the U.S. Supreme Court in *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002), wherein the court ruled that "we have held that a State is not a 'person' against whom a §1983 claim for money damages might be asserted."

OKDHS (which was originally known as the Department of Public Welfare and later as the Department of Institutions, Social and Rehabilitative Services) was created in 1936 by

§2 of Article 25 of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article 25. *See* 56 O. S. §§162.1(a) and 162.1a. Section 2 also requires OKDHS to "perform such other duties as may from time to time be prescribed by law." *See generally City of Sand Springs v. Department of Public Welfare*, 1980 OK 36, 608 P.2d 1139. Section 3 of Article 25 created the Oklahoma Public Welfare Commission (which was more recently known as the Commission for Human Services) as the governing body for the Department of Public Welfare (now the Department of Human Services). *See* 56 O.S. §§162.1(a) and (b) and §162.1a. However, the Oklahoma Commission for Human Services was abolished in 2012 when §3 and §4 of Article 25 of the Oklahoma Constitution were repealed by the adoption of State Question No. 765, Legislative Referendum No. 362, at the election held November 6, 2012. The powers formerly vested in the Commission were transferred to the Director of Human Services and the Governor of Oklahoma by 56 O.S. §162 effective November 7, 2012.

In view of OKDHS's history, purpose, manner of operation, and stated statutory power, it cannot be controverted that OKDHS is indeed an "arm" of the State of Oklahoma and, as such, is not subject to suit under §1983 in either federal or state court for alleged federal constitutional violations and Plaintiff's Complaint should be dismissed.

### *C.* Plaintiff's Complaint fails to state a claim upon which relief can be granted against DHS under the Oklahoma Governmental Tort Claims Act ("GTCA")

All tort actions and claims against the State of Oklahoma and its agencies (including DHS) and employees arising after October 1, 1985, are governed by the provisions of the GTCA. *See* 51 O.S. § 171. By enacting the GTCA, the Oklahoma Legislature adopted

and expanded the common law doctrine of sovereign immunity to include all torts of State employees regardless of whether the employees are engaged in "governmental or proprietary functions" as long as the employees were within the scope of their employment with the State.  *See* 51 O.S. § 152.1(A) and § 153(A).  However, 51 O.S. § 152.1(B) effectuated an express partial waiver of the State's sovereign immunity but "only to the extent and in the manner provided" in the GTCA.  Thus, the liability of the State and its agencies under the GTCA is "subject to the limitations and exceptions specified in this act" and is "exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise." 51 O.S. §§ 153(A) and (B). Further, because the GTCA is in derogation of sovereign immunity it cannot be "…construed to divest the state of its immunities unless the intention to do so is clearly expressed"[5] and a waiver of sovereign immunity "will be strictly construed, in terms of its scope, *in favor of the sovereign.*"[6]

## D.  DHS Is Explicitly Exempt From Plaintiff's "Causes of Action" Nos. 1, 2, 3, 4, <u>and 5</u>

The GTCA exempts state agencies from tort liability for losses resulting from the "enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy [.]" 51 O.S. § 155(4).  The GTCA exempts state agencies, such as DHS,

---

[5] *Gurley v. Mem. Hops. Of Guymon,* 1989 OK 34, ¶6, 770 P.2d 573, 576.
[6] *Sossamon v. Texas,* 563 U.S. 277, 284, 285 (2011).

from tort liability for losses resulting from the "enforcement of *or failure to adopt or*

*enforce a law*, whether valid or invalid, including, but not limited to, any statute, charter

provision, ordinance, resolution, rule, regulation or written policy [.]" 51 O.S. §

155(4)(Emphasis supplied). In this regard, the Oklahoma Court of Civil Appeals ruled in

*Skurnack v. State ex. rel. Dept. of Human Services*, 2002 OK CIV APP 37, ¶5, 46 P.3d 198,

that DHS and its social workers are not liable for actions taken to enforce the Oklahoma

Children's Code as follows:

> DHS relies on the fourth of these exemptions, which provides that the state
> or its political subdivisions "shall not be liable if a loss or claim results from
> . . . enforcement of . . . a law, whether valid or invalid, including, but not
> limited to, any statute, charter provision, ordinance, resolution, rule,
> regulation or written policy." 51 O.S. 2000 Supp. §155(4). DHS argues that
> it is entitled to immunity under §155(4) because it was "fulfilling its statutory
> obligation under the Oklahoma Children's Code and the Child Abuse
> Reporting and Prevention Act, 10 O.S. §7001-1.1 et seq. and, 10 O.S. §7101
> et seq." We agree.

The obverse is also true under the GTCA:

> Section 155(4) provides for immunity for "[a]doption or enforcement of *or*
> *failure* to adopt or *enforce a law,* whether valid or invalid, *including, but not*
> *limited to, any statute,* charter provision, ordinance, resolution, rule,
> regulation or written policy." (Emphasis added.) Viewed in the best light
> possible, Plaintiffs alleged that DHS failed to enforce the law. DHS is thus
> immune from liability. *See, Felkins v. Oklahoma Firefighters Pension and*
> *Ret. Sys.,* 2005 OK CIV APP 39, ¶ 13, 116 P.3d 195, 198 (retirement system
> trustees immune based on alleged failure to enforce law); and, *Bordwine v.*
> *Oklahoma Firefighters Pension and Ret. Sys.,* 2004 OK CIV APP 75, ¶ 11,
> 99 P.3d 703, 706–07 (failure to credit military service as required by law).

*GJA v. Oklahoma Dep't of Hum. Servs.,* 2015 OK CIV APP 32, ¶ 18, 347 P.3d 310, 314

(Emphasis as in original). *See also Briggs v. Oklahoma ex rel. Oklahoma Dep't of Human*

*Servs.,* 472 F. Supp. 2d 1304, 1310 (W.D. Okla. 2007) (holding that DHS is exempt under the GTCA for the "alleged negligent failure to adequately investigate reports of abuse.").

Plaintiff's plain theory of liability is that DHS failed to enforce the provisions of Oklahoma statutory and/or regulatory codifications.[7] But this theory is squarely within the GTCA's exemption. "The intent and purpose of section 155(4) was the preservation of sovereign immunity against claims for losses resulting from a state agency's failure to enforce a law." *Briggs v. Okla. ex. Rel. Okla. Dep't of Human Servs.,* 472 F. Supp. 2d 1304, 1310 (W.D. Okla. 2007) ). *See also Burns v. Holcombe*, 2010 WL 2756954 at *13 (E.D. Okla. 2010) ("the language of the GTCA as well as recent case law construing these provisions makes clear the state and/or a political subdivision is not subject to suit for discretionary acts such as hiring, supervising, and training employees, as well as enforcement of adoption of rules or policies.") DHS's alleged failures to enforce, comply with, or follow Oklahoma statutory and regulatory laws associated with the Greer Center or Plaintiff fall squarely within section 155(4) and its exemption for any losses resulting therefrom. Based on the allegations of the Complaint, OKDHS is exempt from tort liability for Plaintiff's claims and dismissal should be granted.

### E.    DHS Is Exempt From Tort Liability From Acts Or Omissions Of An Independent Contractor As Per 51 O.S. § 155(18).

Plaintiff clearly admits DHS' Greer involvement is limited to ownership of the

---

[7] In this vein, Plaintiff's negligence per se "cause of action" is redundant. Negligence *per se* can be used to establish civil liability when a court adopts a statutory enactment as the standard of care and the other necessary elements of negligence are present. *See, for example, Mansfield v. Circle K. Corp.,* 1994 OK 80, 877 P.2d 1130.  But DHS is exempt for failing to enforce or follow which ever enactment Plaintiff premises liability on.

campus and buildings and further admit <u>Greer was operated by Liberty of Oklahoma Corporation/Liberty Healthcare Corporation (hereinafter "Liberty") as a contractor *wholly independent from DHS for 25 years and Liberty – through its employees – was to provide medical and rehabilitative services to Greer residents such as John Doe.*</u>[8] Likewise, Plaintiff admits it was *Liberty* who "…staffed Greer Center with a variety of employees and agents, including, but not limited to nurse aides, registered nurses, medical doctors, and psychologists."[9] Further, Plaintiff tells us that the alleged perpetrators of abuse were "…all employees or agents of Liberty…."[10] who deliberately concealed/conspired to conceal their alleged abuses from OKDHS. Which is to say that retaining ownership of real estate and buildings thereon does not lead to any reasonable conclusion that OKDHS was operating Greer or providing residential care to Plaintiff. Instead, what Plaintiff tells us is that she clearly knew and knows Liberty was an independent contractor of DHS and that she knew and knows John Doe was receiving care from Liberty. The GTCA specifically and ineluctably exempts state agencies from tort liability for losses resulting from the acts or omissions of "an independent contractor" or "of a person other than an employee of the state or political subdivision at the time the act or omission occurred." by 51 O.S. §155(18). Plaintiff's Petition/Complaint and claims for relief are comprised of allegations of intentional abuse and intentional acts of intimidating, threatening, and intentionally confusing John Doe <u>by employees of an entity that Plaintiff admits were employed by an</u>

---

[8] *See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶ 19.
[9] *See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶ 30.
[10] *See* Plaintiff's Petition [Complaint, Doc.# 1-2] at ¶ 30.

independent contractor of DHS – and axiomatically then not employed by DHS. Accordingly, DHS is statutorily immune from any liability and Plaintiff's suit against DHS must be dismissed. *See, inter alia, Teeter v. City of Edmond,* 2004 OK 5, 85 P.3d 817; *Sullins v. American. Medical Response of Oklahoma, Inc.,* 2001 OK 20, 23 P.3d 259; 51 O.S. § 155(18); 51 O.S. 152(7).

### F.  DHS is exempted from tort liability by 51 O.S. §155(5) for losses resulting from negligent training or supervision

Plaintiff alleges that DHS failed to properly train employees of independent contractor Liberty.  However, even if the Liberty employees were employees of DHS somehow, DHS is unequivocally exempt from liability for such claims because the GTCA exempts DHS from liability for losses resulting from the failure to perform or the performance of discretionary acts such as hiring, retention, supervision, and <u>training</u>.  51 O.S. § 155(5).  *See Burns v. Holcombe*, 2010 WL 2756954 at *13 (E.D. Okla. 2010) ("the language of the GTCA as well as recent case law construing these provisions makes clear the state and/or a political subdivision is not subject to suit for discretionary acts such as hiring, supervising, and training employees, as well as enforcement of adoption of rules or policies.") (granting summary judgment to political subdivision as to claim based on negligent training and supervision of police officers because such claim was precluded by the discretionary function exemption of the GTCA) (citing *Elizabeth S. v. Okla. City Pub. Sch.,* 2008 WL 4147572, at *5 (W.D. Okla. 2008) and *Ochoa v. Taylor*, 1981 OK 20, 635 P.2d 604,608–09.  *See also Pierce v. State of Okla., ex rel. Dept. of Human Services,* 2008 WL 2987190 (E.D. Okla. 2008) (holding that §155(4) barred negligence claims against

DHS based on DHS's alleged "negligent hiring, training, and supervision" of agency social workers involved in child abuse investigation.)

### G.  Plaintiff Cannot Recover Punitive Damages As A Matter Of Law

Plaintiff includes a claim for punitive damages against DHS. However, Plaintiff is unable to recover such damages against DHS for any alleged tort as a matter of law and such claims must be dismissed:

> C. No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages.

51 O.S. § 154(C);

> [t]he GTCA also prohibits the recovery of punitive damages against the School District. 51 *Okla. Stat.* § 154(C) ("No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages.").

*Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla.,* 960 F. Supp. 2d 1254, 1269–70 (N.D. Okla. 2013).

### H.  Plaintiff Cannot Recover For Events Occurring Prior To Their Provision Of Notice Under The GTCA

The GTCA provides a framework for bringing suit against the sovereign and this framework begins with providing notice to the state or political subdivision of the claim which provides, *inter alia,* the date, time, place, and circumstances of the claim. In addition, there are specific time frames in which such notice of claim must be provided. To wit:

> "…claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs." 51 O.S. §156(B).

Thus, the clear and explicit mandate of the Legislature is that the required notices must be provided within a year of the occurrence or claims against the sovereign will be forever barred and Oklahoma jurisprudence provides that the "…limitations within the Act control over general statutory law"[11] and that "the 'special time limitations of the Tort Claims Act are conditions imposed upon the very right to bring the action and are not directed solely to the remedy.'" *Randolph v. Oklahoma Military Dep't ex rel. State*, 1995 OK CIV APP 30, ¶ 10, 895 P.2d 736, 739(Court quoting *Ceasar v. City of Tulsa,* 861 P.2d 349,351 9 Okla. App. 1993)).

The foregoing in mind, Plaintiff alleges she filed a tort claim on September 17, 2024. As such, any claims by Plaintiff occurring prior to September 17, 2023 are forever barred and no recovery can be had as a matter of law. Resultantly, any such claims must be dismissed under Fed. R.Civ. P. 12(B)(6).

### I. Alleged Acts Of Violence And Other Intentional Acts Are Supervening Causes

Generally, "the causal connection between an act of negligence and an injury is broken by the intervention of a new, independent and efficient cause which was neither anticipated nor reasonably foreseeable." *Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶12, 652 P.2d 260, 264. This intervening act "is called in the law the 'supervening cause.'" *Id.* at ¶14. A supervening cause must be 1) independent of the original act; 2) adequate by itself to cause the complained of injury; and 3) not reasonably foreseeable. *Id.*

---

[11] *Rout v. Crescent Pub. Works Auth.,* 1994 OK 85, ¶ 8, 878 P.2d 1045, 1049.

at ¶ 15. When these prongs are met, "the original negligence may be said to undergo a legal metamorphosis into a remote cause or 'mere condition.'" *Id.*

As a matter of law, "a person is generally deemed not liable at common law for a third party's deliberate act. A third person's intentional tort is a supervening cause of the harm that results—even if the actor's negligent conduct created a situation that presented the opportunity for the tort to be committed—unless the actor realizes or should realize the likelihood that the third person might commit the tortuous act." *Graham v. Keuchel,* 847 P.2d 342, 349 (Okla. 1993). "Foreseeable risk of harm establishes the zone of risk to assess whether defendant's conduct created a generalized and foreseeable risk of harm to plaintiff." *Estate of Doyle v. Sprint/Nextel Corp.,* 248 P.3d 947 (Okla Civ. App. 2010) (citing *Lowery v. Echostar Satellite Corp.,* 160 P.3d 959, 964 (Okla. 2007). "A defendant's action that creates some foreseeability of danger does not necessarily impose a duty on that defendant for that action." *Lowery* at 966. "The outer limits beyond which the law will not find a foreseeable risk of harm to a particular plaintiff that entitles him (her) to protection are set by reason and good sense." *Morales v. City of Oklahoma City,* 230 P.3d 869, 878 (OK 2010). "When the intervening act is <u>intentionally tortious or criminal</u>, it is more likely to be considered independent." *Prince v. B.F. Ascher Co., Inc.,* 90 P.3d 1020, 1029 (Okla. Civ. App. 2004).

Further, the "general rule is that, absent special circumstances, no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party. Oklahoma follows that rule." *Prince v. B.F. Ascher Co., Inc.,* 90 P.3d 1020, 1028 (Okla. Civ. App. 2004). Normally "the actor has much less reason to anticipate intentional

14

misconduct than he has to anticipate negligence, <u>particularly where the intentional conduct is a crime</u>, since under ordinary circumstances it may reasonably be assumed that no one will violate criminal laws." *Id.* (emphasis added).

In this case, the deliberate, intentional, and largely criminal acts of Liberty employees - an independent contractor as admitted by Plaintiff - creates a supervening cause as a matter of law and OKDHS had no duty to prevent or anticipate such actions. Even assuming *arguendo* OKDHS was negligent in some fashion (and that such negligence on behalf of OKDHS was not exempt from liability as is the plain case here) the intentional and/or criminal actions including threats of intimidation and coercion, bribery, and confusion, by employees of the independent contractor, are plainly "independent of the original act" of any alleged negligence by OKDHS and are irrefutably "adequate by itself to cause the complained of injury." Accordingly, the allegations of Plaintiff distinctly and succinctly describe intervening and/or supervening acts of third parties (employees of an independent contractor) which supplant any liability for negligence by OKDHS.

### J.  DHS Is Not Liable For Assault And/Or Battery Allegedly Committed By Employees Of <u>An Independent Contractor</u>

Tellingly, Plaintiff's suit does not allege that any DHS employee assaulted or battered Plaintiff (or any resident of Greer). Instead, Plaintiff plainly alleges it was *Liberty* employees that assaulted and battered John Doe. As discussed *supra,* Plaintiff knows, admits, and concedes that Liberty is an independent contractor of OKDHS. Accordingly, OKDHS is exempt from liability for the actions of independent contractors as discussed further *supra*. However, despite this knowledge/admission/concession, Plaintiff makes the

allegation that these unnamed employees of the independent contractor were somehow under the control of OKDHS. And so Plaintiff, despite knowing and having admitted Liberty was an independent contractor of OKDHS, alleges that OKDHS is answerable for the intentional actions, inarguably committed in bad faith, of employees of a domestic, corporation that was operating Greer and providing, as Plaintiff admits, the treatment John Doe needed as per a contract which Plaintiff concedes and admits is legal and proper. This is well beyond the established bounds of agency law. To follow Plaintiff's logic would be to cast asunder a wide swath of well-settled law. But entertaining Plaintiff's misguided logic and abandonment of her own knowledge and admissions for sake of argument, even if OKDHS somehow had ultimate control over the employees of Liberty, the alleged actions of the Liberty employees in assaulting and/or battering any resident of Greer requires bad faith for which OKDHS is exempt from liability. *See, inter alia, Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 13, 212 P.3d 1158, 1164.

### K.  Plaintiff's Claim for Breach of Contract Against DHS Fails as a Matter of Law

Plaintiff does not have standing to assert a breach of contract claim against DHS. Plaintiff has not and cannot allege that she entered into any contract with DHS for treatment of John Doe at Greer.   Instead, as Plaintiff knows, the contract at issue was entered into between OKDHS (the promisee) and Liberty (the promisor).  Neither Plaintiff nor John Doe were actual parties to this contract.  Nevertheless, although Plaintiff was not in privity to the contract at issue, it is conceivable that they could be classified as third-party beneficiaries of the contract.  However, simply being classified as a third-party beneficiary does not vest in Plaintiff unlimited authority and it does not create standing to assert claims

against OKDHS.

It has long been established that the rights of a third-party beneficiary are particularly limited. The rights conferred upon *any* third-party beneficiary are *only* as great as those of the promisee and nothing more. *Catholic Charities of Sw. Kansas, Inc. v. PHL Variable Ins. Co.*, 74 F.4th 1321, 1324-25 (10th Cir. 2023); Restatement (Second) of Contracts § 305 (1981). In other words, for purposes of interpreting and applying any contractual rights, Plaintiff and OKDHS are the same party. As such, the third-party beneficiary status would merely allow Plaintiff to step into the shoes of OKDHS and attempt to enforce OKDHS' contractual rights. *Wathor v. Mut. Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 15, 87 P.3d 559, 563; *Cathryn R. Wallace v. Golden Rule Insurance Co.*, CIV-22-00878-PRW, 2023 WL 6380016, 5 (W.D. Okla. Sept. 29, 2023); Restatement (Second) of Contracts § 302 (1981). Conversely, the status of third-party beneficiary does not create any basis upon which Plaintiff could assert any rights or liability against the promisee – OKDHS. It is axiomatic that one cannot sue themselves for breach of contract and, with respect to this contract, which is precisely what Plaintiff's breach of contract cause of action purports to do.

Instead, any potential duty owed to a third-party beneficiary flows from the promisor's agreement to undertake said duty; it does not flow from the promisee to the third-party. Restatement (Second) of Contracts § 304-305 (1981); *See also Prasad v. George Washington Univ.*, 390 F. Supp. 3d 1, 34 (D.D.C. 2019) (holding that even if a third-party beneficiary could sue a promisor to enforce a contract, "the third-party beneficiary cannot, however, sue the promisee for breach of the promisee's contract with

17

the promisor."); *Biggins v. Shore*, 523 Pa. 148, 565 A.2d 737, 741 (1989) (holding that a third-party beneficiary may assert a right of action against the promisor which is justified by the fact that there is no cause of action against the promisee.)  Consequently, As such, the breach of contract claim against DHS must be dismissed.

### III. CONCLUSION

For the reasons set forth above, Defendant OKDHS respectfully request that the Court grant the instant Motion and dismiss Plaintiff's suit.

Respectfully submitted,

s/John K.F. Langford
John K.F. Langford (OBA #21012)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK  73125-0352
Telephone:  (405) 521-3638
E-mail: John.Langford@okdhs.org
*Attorney for Defendant Oklahoma Department*
*Of Human Services*

### CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025, the foregoing document was electronically submitted to the Clerk of the Court using the ECF System for filing and service.

s/ John K.F. Langford
John K.F. Langford